UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| VICTORIA N. ROBISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-178-ERW |
| ) | |
| NANCY A. BERRYHILL, Deputy ) | |
| Commissioner of Operations for ) | |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Victoria Robison ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 19) and Defendant has filed a brief in support of the Answer (ECF 24).

**I. Procedural History**

Plaintiff filed her application for DIB under Title II of the Social Security Act on February 12, 2015. Plaintiff claimed she became disabled on November 20, 2012, because of fibromyalgia, bipolar disorder, conversion disorder, possible Sjogrens syndrome, anxiety, PTSD, and IBS. (Tr. 215.) Plaintiff was initially denied relief on August 18, 2015. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), at which Plaintiff and a vocational expert testified. (Tr. 34-85.) After the hearing, by a decision dated April 19, 2017, the ALJ found Plaintiff was not disabled. (Tr. 14-33.) On June 26, 2017, the Appeals Council

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues: 1) the ALJ's determination that Plaintiff's mental impairments were non-severe was not based upon substantial evidence; and 2) the ALJ's determination of residual functional capacity (RFC) was not based upon substantial evidence.

For the reasons that follow, the ALJ did not err in his determination.

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 19 at 2-32) and notes they are admitted in their entirety by the Commissioner (ECF 24-1). The Court also adopts the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF 24-2) and notes they are unrefuted by Plaintiff. Together, these statements, as well as specific facts discussed as needed to address the parties' argument, provide a fair and accurate description of the relevant record before the Court.

## III. Discussion

### A. **Legal Standard**

To be eligible for disability insurance benefits under the Social Security Act, Robison must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

3

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the

conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider: 1) the credibility findings made by the ALJ; 2) the plaintiff's vocational factors; 3) the medical evidence from treating and consulting physicians; 4) the plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments; 5) any corroboration by third parties of the plaintiff's impairments; 6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question, which sets forth the claimant's impairments. *Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). *See also Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1018–19 (E.D. Mo. 2017).

The Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

**B. The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the requirements of the Social Security Act through December 31, 2016, and that

5

she had not engaged in substantial gainful activity since November 20, 2012.[2] (Tr. 28.) The ALJ found that Plaintiff's degenerative disc and joint disease of the cervical spine, status post micro discectomy and fusion at C-5-C6, and obesity were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-21.)[3]

The ALJ found that through December 31, 2016, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except Plaintiff cannot engage in any overhead reaching or lifting bilaterally. (Tr. 21.) In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding her abilities, conditions and activities of daily living. While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, she also found Plaintiff's statements about the intensity, duration and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 23.)

The ALJ determined that through the date last insured, Plaintiff was capable of performing past relevant work as a customer relations clerk and an order clerk. (Tr. 26-27.) The ALJ determined that this work did not require the performance of work-related activities precluded by the claimant's RFC. *Id.* In the alternative, at the hearing, the ALJ asked the vocational expert to assume, in addition to the RFC stated above, that Plaintiff was limited mentally to simple tasks requiring only simple decision making, few changes in the routine work

---

[2] At the hearing before the ALJ, Plaintiff noted she had amended her onset date of disability to December 18, 2013, from November 20, 2012. The ALJ stated he had reviewed her amendment, but did not reflect the amended date in his decision. Although this Court notes the discrepancy, the onset date is not at issue in the analysis that follows.

[3] The ALJ additionally found that Plaintiff's degenerative joint disease in the lumbar spine, migraine headaches, fibromyalgia, depression, anxiety and PTSD were non-severe. (Tr. 19-20.) Plaintiff challenges the ALJ's finding that her mental impairments were non-severe.

setting, and no more than occasional interaction with supervisors, co-workers, and the general public. *Id.* at 27. The ALJ found the vocational expert testimony to support a conclusion that given this alternative hypothetical, Plaintiff could perform work as it exists in significant numbers in the national economy, and specifically, as an addresser and document preparer. *Id.* The ALJ therefore found Plaintiff not to be disabled. *Id.*

### C. Analysis of Issues Presented

In her brief to the Court, Plaintiff argued that: 1) the ALJ's determination that Plaintiff's mental impairments were non-severe was not based upon substantial evidence; and 2) the ALJ's determination of Plaintiff's residual functional capacity (RFC) was not based upon substantial evidence. The Court addresses each of Plaintiff's proffered issues below.

#### 1. The ALJ erred in finding Plaintiff's mental impairment non-severe.

Plaintiff contends the ALJ's determination that her mental impairments were non-severe was not based upon substantial evidence. Plaintiff asserts "overwhelming evidence from the medical record clearly shows that the Plaintiff had mental impairments that would have had more than a minimal impact on her ability to work." (ECF 19 at 38-39). Plaintiff specifically challenges the ALJ's determination that she had only *mild* functional limitations interacting with others.

The ALJ did not err in finding plaintiff's mental impairments were non-severe. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 404.1508. To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. § 404.1520(c). An impairment is "nonsevere" if it has no more than minimal impact on an individual's physical or mental ability to do basic

work activities. 20 C.F.R. §§ 404.1521(a) and 416.921(a). "Basic work activities" include mental functions such as seeing, hearing, speaking, using judgment, responding appropriately to coworkers and work situations, and understanding, carrying out and remembering simple instructions. 20 C.F.R. § § 404.1521(b) and 416.921(b). Slight abnormalities that have no more than minimal effect on a claimant's ability to do basic work activities are not considered severe. *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

In this case, the ALJ specifically addressed each of the four broad areas of mental functioning set out in the disability regulations, known as the "Paragraph B Criteria." The ALJ found Plaintiff had mild restrictions in understanding, remembering or applying information, mild restrictions in her social function, mild deficiencies in concentration, persistence or pace, and mild limitations in adapting or managing oneself. These mild limitations typically indicate that a mental impairment is not severe. 20 C.F.R. §§ 404.1520a (d)(1) and 416.920a(d)(1).

The ALJ's conclusions are borne out by the Court's review of the record. Plaintiff's longitudinal treatment history reflects essentially normal mental status examinations. Plaintiff's treating physicians recorded that she exhibited a normal mood and affect. Pursuant to multiple examinations, Plaintiff's treating physicians noted she exhibited a normal mood and affect: Dr. Jennifer Barbin (Plaintiff's primary care physician), Dr. Richard DiValerio (Plaintiff's treating neurologists), Dr. Narsimha Muddasani (Plaintiff's Psychiatrist), and Dr. Ranjan Malhotra (Plaintiff's eye doctor). Other treating physicians, Dr. Andrew Youkilis and neurologists, Dr. Jumean Khaled and Dr. Richard Head, noted Plaintiff was awake, alert and oriented to person,

place and time. (Tr. 345, 495, 529, 558.) Plaintiff's therapist, Bonny Thacker, and psychiatric nurse practitioner, Josetta Wahwassuck, reported normal speech, a clear and goal-focused thought process, good attention, concentration and an intact memory. (Tr. 652, 655, 657, 659, 661.)

The record further establishes that Plaintiff's symptoms were responsive to and improved with medication. In February 2014, Plaintiff indicated to her primary care physician, Dr. Barbin, that her depression symptoms were better since starting medication. (Tr. 384.) In October 2014, Dr. Barbin noted Plaintiff attempted to decrease her meds, worsening her mood and affect. (Tr. 416.) In September 2015, Plaintiff was prescribed Abilify, and the following month she reported her mood and relationship with her mother-in–law improved. (Tr. 654.) A month later, Plaintiff's mood worsened after she missed two doses of Abilify, but improved when she resumed taking her medicine. (Tr. 659.) Evidence that medication improved and controlled Plaintiff's symptoms supports the ALJ's determination that Plaintiff's mental impairments were non-severe. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (impairment that can be controlled by treatment or medication cannot be considered disabling); *Moore v. Astrue*, 572 F.3d 520, 524–25 (8th Cir. 2009) (claimant's ability to manage back and knee pain through medication is inconsistent with alleged disabling level of pain).

Plaintiff specifically takes issue with the ALJ's conclusion that she had only mild limitations in her *social* functioning. Plaintiff argues the medical and opinion evidence establishes she was severely limited in her ability to interact with others, and therefore incapable of performing past relevant work as a customer relations clerk and an order clerk—jobs that required frequent social interaction. In support, Plaintiff contends the ALJ's determination conflicted with the evaluations of consulting psychologists, Thomas Spencer and J. Edd

9

Bucklew, and the medical source statement of psychiatric nurse practitioner Josetta Wahwassuck. Both Dr. Spencer and Dr. Bucklew found Plaintiff demonstrated a moderate impairment in her ability to interact socially. Nurse practitioner Wahwassuck indicated Plaintiff's ability to interact appropriately with the public, co-workers and supervisors would be precluded 10-20 percent of an eight-hour workday. Plaintiff asserts the ALJ erred in assigning each of these opinions "little weight."

While treating physicians are generally entitled to substantial weight, here, there are no opinions regarding Plaintiff's mental impairments from her treating physicians. 20 C.F.R. §§ 404.1527(d) and 416.927(d). Instead, the ALJ considered the opinions of a nurse practitioner, a consultant psychologist for the agency and a state agency reviewing psychologist. As discussed below, the ALJ explained why he chose to discount the opinions, and that explanation offered a sufficient basis to support his decision. *Coffman v. Berryhill*, No. 4:16 CV 566 JMB, 2017 WL 3720074, at *15–16 (E.D. Mo. Aug. 29, 2017). *Cf. Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (finding error when the ALJ offered no basis to give an opinion non-substantial weight).

First, as noted above, the medical source statement completed by Ms. Wahwassuck indicated Plaintiff's impairments would preclude her from performing most work-related functions, including her ability to interact with co-workers, supervisors and the public, for 10 to 20 percent of the workday. (Tr. 706-08.) In discounting Ms. Wahwassuck's opinion, the ALJ took into consideration that she was not an "acceptable medical source" pursuant to 20 C.F.R. § 1527. "Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two main groups: medical sources and non-medical sources." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R.

§§ 404.1502, 416.902). Nurse practitioners and therapists "are specifically listed as 'other' medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairments on the claimant's ability to work." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)). Evidence provided by "other sources" must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record. *See id.* at 886–87; *see also Raney v. Barnhart,* 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.") (citation omitted).

With the above directives in mind, the Court finds the ALJ properly set forth adequate reasons for giving little weight to the opinion of Ms. Wahwassuck. The ALJ was permitted to discount her opinion because the record as a whole is largely inconsistent with the level of dysfunction opined by Ms. Wahwassuck. As discussed above, the record reflects essentially normal mental status examination findings by Plaintiff's treating physicians supporting a determination that her mental impairments are non-severe. Even Ms. Wahwassuck's own treatment notes are, to some extent, inconsistent with the restrictions she opined. For example, Ms. Wahwassuck observed that Plaintiff had normal speech, a clear and goal-focused thought process, good attention, concentration and an intact memory. (Tr. 655.) She also indicated Plaintiff's symptoms improved when she took her medication (Abilify). (Tr. 654.) The Court finds the record is inconsistent with the broad spectrum deficit in every area of Plaintiff's mental functioning that Ms. Wahwassuck alleges.[4]

---

[4] In discounting Ms. Wahwassuck's opinion, the ALJ remarked that Plaintiff's mental health symptoms did not meet the 12-month durational requirement for a severe impairment under the Social Security Act as Plaintiff did not commence treatment until August 2016. *See* 20 C.F.R.

Substantial evidence also supports the ALJ's determination to accord little weight to the opinions of examining consultant psychologist Thomas Spencer and non-examining consultant psychologist J. Edd Bucklew. Both opined Plaintiff had moderate limitations in her ability to interact socially. As discussed above, however, Plaintiff's longitudinal treatment record supported a finding that Plaintiff had only mild limitations in mental functioning and therefore, nonsevere mental impairments. Here, both opinions were inconsistent with the longitudinal record. Given further that both psychologists were not treating sources, the Court finds the ALJ was entitled to afford their opinions little weight. *See* 20 C.F.R. § 404.1527(c)(2); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (noting that, in general, more weight is given to opinions of sources who have treated a claimant, and to those who are treating sources). *See also Koschnitzke v. Barnhart*, E.D.Wis.2003, 293 F. Supp.2d 943 (the Commissioner may use evidence from "other sources," in a social security disability benefits case, to show the severity of a claimant's impairments and how they affect his ability to work, but Commissioner is not required to apply the stringent treating source rule in evaluating such opinions).

The Court further notes Plaintiff's own account of her social functioning supports the ALJ's determination she had mild limitations in this area. Plaintiff indicated she lived with her husband, children and mother-in-law. Although Plaintiff conceded she had some issues with her mother-in-law, she also acknowledged with the help of Abilify, her interactions with her

---

§§ 404.1509 and 416.909. However, the Court notes that while Plaintiff began treatment with Ms. Wahwassuck in August 2016, the record indicates she had previously been a patient of Psychiatrist Dr. Narsimha Muddasani from January 2014 through July 2016. Although the ALJ misstates when Plaintiff commenced treatment, his observation is without impact as it was not the sole basis for discounting Ms. Wahwassuck's opinion, nor was it part of the ALJ's discussion of the paragraph B Criteria and determination that her mental impairments were non-severe in nature. As addressed above, because Ms. Wahwassuck's opinion constitutes evidence provided by "other sources," the ALJ was permitted to discount her opinion based upon its inconsistency with the record as a whole.

improved. (Tr. 654.) Plaintiff stated she occasionally visited with friends, left her home to shop and go to physical therapy every week. (Tr. 228.) Plaintiff indicated she had no problems getting along with family, friends, neighbors and others. (Tr. 228.) As noted by the ALJ, Plaintiff's treating physicians consistently indicated Plaintiff was cooperative.

Finally, to the extent Plaintiff specifically cites to other evidence supporting moderate limitations, it was the ALJ's duty to resolve conflicts in the evidence and the Court may not substitute its opinion for the ALJ's opinion. *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013). While evidence that detracts from the ALJ's decision should be considered, an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)).

2. **The ALJ's residual functional capacity (RFC) was not based upon substantial evidence**.

The ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except Plaintiff could not engage in any overhead reaching or lifting bilaterally. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis. 1 SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of her limitations. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001). A RFC determination

made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff contends the ALJ's RFC was not based upon substantial evidence. Specifically, Plaintiff maintains the ALJ erred in affording little weight to the opinion of Dr. Richard Divalerio, Plaintiff's treating rheumatologist, who opined Plaintiff was limited to less than occasional reaching, handling, fingering, feeling, and to occasionally lifting and carrying five pounds. (Tr. 590.) Plaintiff states Dr. Divalerio's limitations are supported by evidence on the record of her history of neck and shoulder pain. Plaintiff states had the ALJ properly weighed Dr. DiValerio's opinion and determined her RFC limited her to *less than occasional* reaching (in front as well as overhead), handling, fingering and feeling, she would be precluded from performing the jobs referenced by the ALJ in his decision.

In determining whether a claimant is disabled, medical opinions are considered by the ALJ together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b). The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted).[5] Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be

---

[5] The regulations describe a treating source as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The parties do not dispute Dr. DiValerio is a "treating source."

evaluated as a whole.'" *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotations omitted). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Prosch*, 201 F.3d at 1013 (citing 20 CFR. § 404.1527(d)(2)).

The Court finds substantial evidence supports the ALJ's reasoning that Dr. DiValerio's opinion was entitled to little weight. The ALJ concluded that although Dr. DiValerio had a history of treating Plaintiff, the severe limitations opined by him were not "supported by the medical record as a whole or even by his own treatment notes." (Tr. 24.) As set forth in detail by the ALJ, various treating physicians examined Plaintiff's cervical spine and noted she had full range of motion, normal strength, normal reflexes and no trigger point tenderness. Dr. Saulat Mushtaq, Dr. Barbin, Dr. Youkilis, and Dr. Head recorded normal findings with regard to Plaintiff's cervical spine, shoulders and hands. These essentially normal findings do not support the pervasive restrictions opined by Dr. DiValerio.

Moreover, to the extent Dr. DiValerio's opinion was based upon Plaintiff's own account of her symptoms, the ALJ addressed Plaintiff's subjective reports and found they were inconsistent with the medical evidence. *See Wagner v. Astrue*, 499 F.3d 842, 851(8th Cir. 2007) (when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record). Here, Plaintiff's testimony about her severe limitations is not corroborated by her multiple physical examinations. For example, as noted by the ALJ, although Plaintiff ambulated with a wheeled walker, there was no indication in the record she was directed or written a prescription by a physician to do so.

Plaintiff's treating neurologist, Dr. Head, found nothing in his March 2016 examination of Plaintiff to explain her need for a walker or generalized extreme complaints. (Tr. 601.)

The ALJ's assertion that Dr. DiValerio's opinion was inconsistent with his own examination notes is likewise borne out by the Court's review of the record. In May 2015, Dr. DiValerio noted his examination of Plaintiff's cervical spine was normal. (Tr. 350.) In May and June 2016, Dr. DiValerio stated Plaintiff had no tenderness, swelling, deformities, instability, subluxations, weakness, or atrophy involving her hands (Tr. 584, 587) and noted both hands had full and painless free range of motion. Further, during both the May and June exams, Dr. DiValerio observed Plaintiff had no muscle tenderness or trigger points involving her cervical spine. (Tr. 584, 587). In September and December of 2016, Dr. Di Valerio reported slight cervical tenderness to palpation, but again observed no tenderness, swelling, deformities, instability, subluxations, weakness, or atrophy involving her hands and intact and pain free range of motion in all small hand joints. (Tr. 626, 629.) As the restrictions set forth in Dr. DiValerio's opinion are undermined by his treatment notes, the ALJ was further entitled to afford his opinion diminished weight.

Because Dr. DiValerio's opinion is inconsistent with substantial evidence in the record, the Court finds the ALJ did not err in affording it little weight. Nor did the ALJ err in subscribing "great weight" to Dr. David Marty's opinion. Dr. Marty concluded Plaintiff had no limitations handling, fingering or feeling, but was limited in her ability to reach overhead bilaterally. The ALJ incorporated this reaching limitation into Plaintiff's RFC. The ALJ explained that he afforded great weight to Dr. Marty's opinion because it was consistent with and supported by the medical record as a whole, including Plaintiff's generally normal physical

examination results. The Court agrees and finds the ALJ's conclusion was borne out by its review of the record.

### 3. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id*. *See also Buckner*, 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. The Court may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Victoria Robison's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

So ordered this 6th day of May, 2019.

_E. Richard Webber_

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE